UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
<u>MCALLEN DIVISION</u>

| | |
|---|---|
| **ADVENTO PEÑA,** | X |
| **PLAINTIFF,** | X |
| | X |
| **VS.** | X  **CIVIL ACTION NO. 7:15-cv-234** |
| | X |
| **PAVONIA LIFE INSURANCE** | X |
| **COMPANY OF MICHIGAN, f/k/a** | X |
| **HOUSEHOLD LIFE** | X |
| **INSURANCE COMPANY, AND** | X |
| **BENEFICIAL FINANCIAL 1, INC.,** | X |
| **DEFENDANTS.** | X |

<u>**PLANTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**</u>

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF FOR THE SOUTHERN DISTRICT OF TEXAS:**

The Plaintiff ADVENTO PEÑA files this First Amended Original Complaint seeking a declaratory judgment under Chapter 37, Texas Declaratory Judgment Act, Texas Civil Practice and Remedies Code, against the Defendant PAVONIA LIFE INSURANCE COMPANY OF MICHIGAN, formerly known as HOUSEHOLD LIFE INSURANCE COMPANY (hereafter referred to as "PAVONIA"), that interprets and sets out the Plaintiff's rights to payment of benefits under a certain insurance policy and establishes the Defendant "PAVONIA's" obligations under the same group credit disability insurance policy that was sold to Plaintiff and issued by through and as part of a loan that the Plaintiff obtained from the Defendant BENEFICIAL FINANCIAL1, INC.(hereafter referred to as "BENEFICIAL"). Also, the Plaintiff sues "PAVONIA" for breach of contract and seeks specific performance under this credit disability insurance

policy issued by this same Defendant. This court action was prompted by the Defendant's refusal to pay further credit disability benefits due under the same policy in breach of the insurance contract by denying the Plaintiff placement for a third "Critical Term" consisting of twenty-four months of monthly disability payments to Plaintiff. The Plaintiff seeks the declaratory judgment under Chapter 37 of the Texas Declaratory Judgment Act, Texas Civil Practice and Remedies Code, to interpret his rights under the credit disability insurance policy issued by Defendant "PAVONIA" to Plaintiff under group policy number UTX061 with effective coverage for a term of one hundred eighty months from the effective start date of May 18th, 2005. The Plaintiff also interposes causes of action against the Defendant "PAVONIA" for the commission of fraud and breach of the duty of good faith and fair dealing in its treatment of Plaintiff with respect to the "policy" as further described below. The Plaintiff also advances claims of violation of Article 21.21 and 21.55 of the Texas Insurance Code against the Defendant "PAVONIA". The Plaintiff asks that he be awarded reasonable attorney's fees for his having to prosecute these causes of action against "PAVONIA". In addition, the Plaintiff sues the Defendant "BENEFICIAL" for the fraudulent misrepresentations it made to Plaintiff through its agent and, also, acting as the agent for Defendant "PAVONIA" in describing the merits and coverages of the "policy" to induce the Plaintiff to accept and buy the "policy". The Plaintiff also claims that he should be awarded reasonable attorney's fees for bringing and prosecuting this cause of action for fraudulent misrepresentations against the Defendant "Beneficial". In support of this First Amended Original Complaint, the Plaintiff would show the Court the following:

# I
# DISCOVERY PLAN

Plaintiff intends that discovery be conducted under a Level 2 Discovery Plan.

# II
# PARTIES

1. The Plaintiff Advento Peña is a resident of Starr County, Texas. He resides at 263 Las Lomas, Rio Grande City, Texas, 78582.

2. The Defendant "PAVONIA" is an insurance company organized and authorized to sell credit disability insurance policies in the State of Texas. The Defendant "PAVONIA" is the successor to and was formerly known as HOUSEHOLD LIFE INSURANCE COMPANY. The Defendant "PAVONIA" may be served with this First Amended Original Complaint through its counsel of record, David G. Oliveira/Roerig, Oliveira & Fischer,L.L.P.

3. The Defendant "BENEFICIAL" is a domestic corporation organized and authorized to transmit loans in the State of Texas. The Defendant "BENEFICIAL" can be served with this First Amended Original Complaint through its attorneys of record, Stephanie R. Smiley/Greenberg Traurig, LLP.

# III
# VENUE AND JURISDICTION

1. The County of Starr is the proper venue for this lawsuit since it involves a credit insurance policy that was performable in Starr County, Texas.

2. The Court has jurisdiction over the subject matter of this case because the damages sought by Plaintiff are in excess of the minimum jurisdictional limits of this Court.

## IV
## **OPERATIVE FACTS**

1. On or about May 18th, 2005, Plaintiff ADVENTO PEÑA bought a credit disability insurance policy (hereafter referred to as the "policy") pursuant to an application for and receipt of a personal loan from Defendant "BENEFICIAL" at its place of business located in McAllen, Texas. The Defendant "BENEFICIAL" offered and sold Plaintiff the "policy" after the Defendant "BENEFICIAL's" employee, *a* male but whose name Plaintiff does not remember and who took care of Plaintiff, gave him a sales talk and explanation at Defendant "BENEFICIAL's office located in McAllen, Texas, on the coverage and benefits that were available to Plaintiff under the "policy", particularly, that Plaintiff was entitled to receive up to one-hundred eighty months of credit disability payments up to a maximum amount of $100,000.00 if he qualified for an initial twenty-four consecutive months defined as the term of a "Critical Period" and for succeeding twenty-four months of "Critical Periods" not to exceed one-hundred eighty months of credit disability payments during the term of the loan. Plaintiff points out that Defendant "BENEFICIAL" has the records of this transaction and is able to identify the employee who misrepresented to Plaintiff the nature of the coverage and benefits available and payable under the "policy". Plaintiff will pursue the identity of the specific employee through discovery. Subsequently, the Defendant "PAVONIA" issued the "policy" to Plaintiff under group disability policy number UTX061 that insured Plaintiff for the payment of disability insurance benefits in the event he became disabled as

defined in the "policy". Under the terms of the "policy" and in the event he qualified, the Plaintiff, as the insured, and, as represented to Plaintiff by the Defendant "BENEFICIAL's" employee at this Defendant's McAllen office on or about May 18th, 2005, and who persuaded him to buy the "policy", that Plaintiff would receive an initial period of twenty-four consecutive monthly benefit payments which the "policy" defined as a "Critical Period". Pursuant to the terms of the "policy", the Plaintiff was eligible to qualify for consecutive "Critical Periods" provided that he applied for them after the expiration of the preceding "Critical Period" and if he met the "policy's" criteria for being deemed disabled.  The sale of the "policy" by Defendant "BENEFICIAL" to Plaintiff also created a fiduciary relationship between Defendant "BENEFICIAL" and Plaintiff since Plaintiff relied on this Defendant's employee's for advice in explaining the terms of coverage and in purchasing the "policy" and they were in an un-even bargaining position.

2. The Plaintiff paid valuable consideration to Defendant "PAVONIA" in the form of monthly premiums of $13.00 that were paid and collected by the Defendant "BENEFICIAL" who received a commission from the sale of the "policy" to Plaintiff.

3. Further, this insurance transaction created a fiduciary relationship between Plaintiff and Defendant "PAVONIA".

4. On or about the year of 2005, while working for his employer and during the term of effective coverage under the "policy", the Plaintiff suffered a work related injury that rendered him disabled under the provisions of the "policy".

5. As a result of his injury and the physical disabilities that prevented Plaintiff from continuing to work, the Plaintiff made a claim under the "policy" for payment of benefits for the term of a "Critical Period.

6. After applying for benefits under the "policy", the Plaintiff was granted and paid disability benefits for the term of twenty-four months constituting the "Critical Period".

7. After being under "Critical Period" status for several months, the Plaintiff was released to return to work with his employer, Chris Equipment Co. Inc., by his treating doctor. After this release to return to work, Plaintiff worked with his employer until the year of 2009. In 2009, Plaintiff was laid off from his employment with Chris Equipment Co., Inc., because he could no longer carry out the duties of his employment due to the bodily injuries he sustained on 2005. As a result, Plaintiff was placed on a second "Critical Period" that ran for another "Critical Period" of twenty-four months. After the second "Critical Period" expired, Plaintiff applied for placement for a third "Critical Period" in order for him to continue receiving disability benefits under the "policy". However, on this third occasion, the Plaintiff's application for the initiation of a third "Critical Period" was rejected by Defendant "PAVONIA" in breach of the insurance agreement and the representations made to Plaintiff by Defendant "BENEFICIAL's" employee, whom Plaintiff will be able to identify after discovery is undertaken and completed in this case, even though it was supported by a written medical opinion issued by his treating physician, Luis A. Arango, M.D., that affirmed that the Plaintiff was still unable to return to work due to his work related injuries sustained in the year of 2005. Under the terms of the "policy" as sold to him, Plaintiff qualified for the next critical period. Defendant refused and failed to give Plaintiff any specific reason for the denial of benefits.

8. By letter dated September 29th, 2011, the Defendant "PAVONIA" rejected Plaintiff's application for the payment of disability benefit payments

due under the "policy" and refused to place Plaintiff under a third "Critical Period" status. In rebuffing the Plaintiff's application, the Defendant "PAVONIA" asserted that the "policy" did not allow for another "Critical Period" status to be granted in contrast to the language of the "policy" that allowed the placement of Plaintiff for a third "Critical Period" status and that the Defendant "PAVONIA" drafted.

9. However, contrary to Defendant "PAVONIA's" position, the "policy" that it sold to Plaintiff expressly provides that Plaintiff can be granted consecutive "Critical Period" terms for the same event that led to the granting of the first or even the second "Critical Period" if he established his eligibility for the payment of insurance benefits arising from the same incident that allowed him to receive benefits under the first and second "Critical Periods" statuses as follows:

   A. In the Certificate of Disability Insurance Schedule and (attached here as Exhibit "A") issued to Plaintiff by Defendant "PAVONIA" after he purchased the "policy", it states that the term of insurance coverage is for one-hundred-eighty months and points out that the maximum amount of disability benefits that an insured could be paid under the "policy" is $100,000.00. This same document annexed as Exhibit "A" states that each "Critical Period" encompasses twenty-four-months.

   B. In the Definitions Section of this same schedule (Exhibit "A"), a "Critical Period" is defined as the number of months for which monthly benefits are payable during any period of disability. It further states that there is no limitation as to the number of "Critical Periods" for which benefits are payable under the "policy", of course, as long as they did not exceed one-hundred-eighty months or the maximum allowable payment in benefits of $100,000.00.

C. In the "policy's" section entitled Description of Insurance Benefits, the pertinent language states that: "[p]ayments of monthly disability benefits will stop at the earliest of …(ii) the date you have received the number of monthly benefits in the Critical Period. This wording refers to the twenty-four months delineated and described in the Certificate of Disability Insurance Schedule.

D. The section that is part of the "policy" and identified as Description of Insurance Benefits concludes with the following statement:

  i. [s]uccessive periods of disability due to the same or related causes should be considered one continuous period of disability unless the beneficiary has been actually employed full time for six consecutive months or, if not actively employed, has engaged in normal activities for six consecutive months.

  ii. None of these two limitations applied to the Plaintiff in this situation. On the contrary, and as supported by the Plaintiff doctor's written medical report delivered to Defendant "PAVONIA", the Plaintiff has been and continues to be under a continuous period of disability due to the same work related accident that he suffered in 2005.

  iii. After the second "Critical Period" term allowed by Defendant "PAVONIA" under the "policy" ended, the Plaintiff applied for placement for another "Critical Period". In compliance with the requirement of the "policy", on December 21st, 2011, the Plaintiff sent Defendant "PAVONIA" a new Proof of Disability form filled out and signed by his treating doctor.

E. In disregard of its contractual obligations owed to Plaintiff, the Defendant "PAVONIA" refused to and did not extend Plaintiff coverage for a third "Critical Period".

## FIRST CAUSE OF ACTION – VIOLATIONS OF ARTICLE 21.21 OF THE TEXAS INSURANCE CODE FOR BREACH OF CONTRACT

1. The Defendant "PAVONIA" violated Article 21.21, Texas Insurance Code, due to its commission of false, misleading, deceptive acts or practices while engaging in the business of insurance. Specifically, the Defendant "PAVONIA" violated Article 21.21 by misrepresenting to Plaintiff as a claimant pertinent facts or policy provisions relating to the coverage at issue and by committing an unconscionable action or course of action by accepting the Plaintiff's payment of premiums and then denying a valid claim made by Plaintiff.

2. The Defendant "PAVONIA's" violations of Article 21.21 of the Texas Insurance Code were the producing cause of Plaintiff's damages, which exceeded the minimal jurisdictional limits of this Court and for which Plaintiff sues.

## SECOND CAUSE OF ACTION – VIOLATION OF ARTICLE 21.55 OF THE TEXAS INSURANCE CODE FOR FAILING TO PROMPTLY PAY ON CLAIMS

1. The Defendant "PAVONIA" violated Article 21.55 of the Texas Insurance Code by failing to promptly grant Plaintiff status under a "Critical Period" as authorized pursuant to the coverage provided by the "policy" in the face of a medical report that Plaintiff was disabled issued by Plaintiff's treating physician and by breaching its duty of good faith and fair dealing that it owed to Plaintiff. Consequently, Defendant "PAVONIA's" failure to

assign Plaintiff to a third "Critical Period" term caused the Plaintiff to suffer monetary damages in the form of loss of benefits paid.

## THIRD CAUSE OF ACTION-
## BREACH OF CONTRACT

1. The Defendant "PAVONIA's" failure to comply with the terms of the "policy" that it sold to Plaintiff by refusing to place Plaintiff in a third twenty-four month "Critical Period" based on Plaintiff's covered disability as certified and documented by his physician constituted a breach of contract. The Plaintiff asks for specific performance of the "policy" and that the Defendant "PAVONIA" be enjoined and ordered to grant Plaintiff a third "Critical Period" and as many subsequent "Critical Periods" that Plaintiff qualifies for under the "policy" and award Plaintiff his monetary damages as caused by Defendant "PAVONIA's" breach.

2. Finally, the Defendant "PAVONIA's" description of insurance benefits payable under the "policy" states that successive periods of disability due to the "same or related" cause will be deemed as one continuous period of disability if the insured had not been actively employed full time for six consecutive months or, if not working, has not engaged in normal activates for six successive months.  Under these restrictions, Plaintiff qualified for a third "Critical Period" or twenty-four months of credit disability payments, but Defendant "PAVONIA" refused to grant it in breach of the contractual agreement.

## FOURTH CAUSE OF ACTION-
## FRAUDULENT MISREPRESENTATIONS

1. The Defendants, jointly and severally, made fraudulent statements to Plaintiff in order to induce him to buy the "policy" by representing that it had benefits and coverage that they later claimed it did not have. The

Defendant "BENEFICIAL" made these representations as detailed above through its male employee who attended Plaintiff on or about May 18th, 2005, and at its McAllen office and induced Plaintiff to purchase the "policy" on behalf of and for the benefit of Defendant "PAVONIA" and itself.

2. In turn, the Defendant "PAVONIA" made the fraudulent misrepresentations through the wording of the "policy" and its attachments as furnished to Defendant "BENEFICIAL" for the purpose of having Defendant "BENEFICIAL" offer and sell it as its agent to Defendant "BENEFICIAL's" loan applicants such as Plaintiff and which consisted of the following: As regards the "policy" sold by Defendant "BENEFICIAL" and issued by Defendant "PAVONIA" to Plaintiff, the Certificate of Insurance attached and written by Defendant "PAVONIA" was specifically designed to mislead prospective and actual customers as happened with Plaintiff who was victimized into believing that he would receive credit insurance disability payments as long as his attending physician certified that his disability was continuous and uninterrupted from the initial date that the insured's disability began.  Plaintiff's physician specifically made such certification, which Defendant "PAVONIA" ignored and refused to comply with the certification.

3. When Plaintiff purchased Defendant "PAVONIA's" credit disability "policy" through the Defendant "BENEFICIAL", both Defendants misrepresented to Plaintiff through fraudulent statements that the underlying loan balance would be paid off, if necessary, for the entire period of his disability for the maximum period of the pronounced one hundred eighty months of coverage. Certainly, Plaintiff was not told by Defendants and, if he had been informed, he would not have paid his hard-eared money on

premiums for a credit disability policy that provided limited benefits for twenty-four months, especially when the policy explicitly made the benefits available for 180 months, and, at the end, would leave him in the predicament of having to pay off the monthly installments on the promissory note out of his pocket at a time when due to his disability he would be unable to work. In other words, Plaintiff was induced to buy the "policy" and it was sold to him by Defendants under the fraudulent misrepresentations that, as long as his initial disability continued as certified by his treating physician, Plaintiff would qualify for successive "Critical Period" terms and his credit disability insurance benefits would be paid as long as his disability continued. Certainly, the language in the "policy" is designed to foster this misunderstanding in the minds of its prospective and actual clients including Plaintiff. If Plaintiff had been informed by Defendants that payment of credit disability benefits was restricted to twenty-four months unless he thereafter experienced another separate disability causing event, Plaintiff would have refused to purchase the "policy".

4. The depth of Defendant "PAVONIA's" deception is shown by the wording of the Notice contained in the Certificate of Group Disability Insurance Schedule given to Plaintiff and that reads verbatim as follows:

**THE AMOUNT OF TERM OF THIS INSURANCE MAY NOT COVER THE FULL AMOUNT OR TERMS OF YOUR LOAN. DISABILITY BENEFITS WILL NOT BE PAID FOR ANY PERIOD OF DISABILITY BEGINNING OR CONTINUING AFTER THE SCHEDULED TERMINATION DATE OF THE DISABILITY INSURANCE SHOWN IN THE SCHEDULE.**

  YOU CAN CANCEL THIS INSURANCE FOR A FULL REFUND OF ANY PREMIUM PAID WITHIN 60 DAYS OF RECEIVING THIS CERTIFICATE. YOUR REQUEST MUST BE IN WRITING AND YOU MUST RETURN THIS CERTIFICATE TO THE CREDITOR OR TO US.

  **CRITICAL PERIOD DISABILITY PAYS A LIMITED BENEFIT WHICH MAY NOT BE ENOUGH TO PAY OF YOUR ACCOUNT.

 5. The first sentence in the first paragraph of the above-quoted language is misleading because it conveyed to the Plaintiff, and he was left with the impression, that Defendant "PAVONIA" would pay benefits if the Plaintiff was disabled for 180 months when, in actuality, Defendant "PAVONIA" knew that it would limit credit disability payments for twenty-four months at the most for each separate disability incurred during the 180 month insurance term.  The Plaintiff was led to believe by the Defendants that he would get 180 months of credit disability benefits when under Defendant "PAVONIA's" interpretation of the term "Critical Period" and the language of the "policy", Defendant "PAVONIA" would compensate him for only twenty-four months if the disability period should happen to last that long.

 6. The second sentence of the first paragraph recited above is even more deceptive in that it states that benefits will not be paid for a disability beginning or continuing after the termination date.  In the Certificate of Group Disability Insurance Schedule, the schedule termination date is shown as 05-23-2020.  This stated date duped Plaintiff into believing that as long as his disability did not start on May 23rd, 2020, or continued after that date, he would receive credit disability benefits under the "policy" up until May 23rd, 2020, if the 180 months of offered benefits ran that long.

7. The final sentence recited above appears to be a warning to the buyer but, in reality, is part and parcel of Defendant "PAVONIA's" fraudulent acts. Of course, given the wording in the Certificate of Group Disability Insurance Schedule that the maximum term of the insurance is 180 months and that the scheduled termination date is 05-23-2020, Plaintiff believed with good reason that monthly credit disability payments would extend for 180 months provided his disability lasted that long.

8. The particular terms of Plaintiff's loan obtained from Defendant "BENEFICIAL" where he borrowed $39,995.12 were as follows: Plaintiff was required to pay the loan in monthly installment amounts of $433.69, principal and interest, plus $14.95 for the credit disability insurance premium, which gradually decreased monthly pursuant to the note language and is payable over a period of 240 months.  In contrast, the "policy" offered by Defendant "BENEFICIAL" and sold by Defendant "PAVONIA" to Plaintiff had a maximum limit of $100,000.00 payable in benefits though the entire loan amount that Plaintiff had to pay, principal and insurance, if paid on a timely and full basis is a lesser amount.

10. Further, and in order to induce Plaintiff into purchasing Defendant "PAVONIA's" credit disability insurance, Defendants told Plaintiff that the amount that could be paid in benefits in the event of his becoming disabled was $2,000.00 per month when, in reality, the limit of the amount Defendant "PAVONIA" had to pay in the event of Plaintiff's disability was $433.69 or less as the monthly payments decreased or, in other words, the monthly benefits would always equal the monthly installment owed under the note and they would never exceed $433.69. Furthermore, Plaintiff's loan term was for 240 months, but the term of the "policy" was for a 180 month period. Plaintiff was led to believe that he would get 180 months of credit

disability insurance benefits provided he remained disabled per his treating physician's certification for 180 months  Clearly, but also fraudulently, the minimal limit of twenty-four months allowed under one "Critical Period" is not mentioned in the Certificate of Group Disability Insurance Schedule.

## PRAYER

Based on the foregoing grounds, the Plaintiff ADVENTO PEÑA prays that this Honorable Court issue a Declaratory Judgment and also enter a Final Judgment in favor of Plaintiff finding and awarding the following recovery and relief:

A.  that the Defendant "PAVONIA" violated Articles 21.21 of the Texas Insurance Code by misrepresenting to Plaintiff the extent of coverage available under certain facts or pertinent provision of the "policy" and in committing an unconscionable action in taking Plaintiff's premium payments and afterwards denying a valid claim made by Plaintiff under the "policy";

B. that Defendant "PAVONIA" violated Article 21.55 by failing to promptly grant status to Plaintiff for a "Critical Period" that he qualified for and made in disregard of  a medical request issued by Plaintiff's treating physician and further breaching its duty of good faith and from dealing that it owed to Plaintiff;

C. that Defendant "PAVONIA" beached the terms of the "policy" by failing to place Plaintiff under a "Critical Period" status for which he qualified in order to avoid paying him benefits due under the "policy" and by committing fraud against Plaintiff by misrepresenting to Plaintiff that he was not covered by the terms of the "policy" though Plaintiff qualified for placement on "Critical Period" status in order to avoid paying Plaintiff benefits due under the "policy";

D. that Defendant "BENEFICIAL" committed fraud through its male employee, who is identifiable to Defendant from its own records of the transaction and from scheduling records kept by Defendant, against Plaintiff by telling him that he would receive benefits under the "policy" for a maximum limit of 180 months as long as he qualified for placement under "Critical Status";

E. that Plaintiff was entitled to and qualified for Defendant "PAVONIA" placing him under a third "Critical Period" and should have paid him benefits under the "policy" for each month of the third "Critical Period" status and Defendant "PAVONIA" is obligated and is ordered to pay Plaintiff the total amount of the benefits that would have been paid to Plaintiff if he had been put under a third "Critical Period" plus pre-judgment and post judgment interest on this sum at the highest rate allowed by law.

F. that Plaintiff is entitled under the "policy" to further placements in "Critical Periods" statuses as long as he establishes that he is qualified per the provisions of the "policy" for a maximum number of 180 months;

G. Plaintiff further prays that he be awarded his reasonable attorney's fees and court costs against the Defendants and necessary to prosecute the respective causes of action against the Defendants and for general relief.

                                              Respectfully submitted,

                                              /S/ *Margil Sanchez, Jr.*
                                              Margil Sanchez, Jr.,
                                              Attorney at Law

Margil Sanchez, Jr.
Attorney at Law
P.O. Box 297
Rio Grande City, Texas 78582
Tel. No. 956-487-7575
Fax. No. 956-487-8491
Email: msjlaw@yahoo.com
Bar Card No. 17570800